# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

TIMOFIY ANFILOFEV,

    Defendant.

No. 3:24-mj-00183-KFR

## **CERTIFICATION AND COMMITMENT FOR EXTRADITION**

Brazil seeks the extradition of Defendant to stand trial for an alleged violation of the Brazilian penal code. The Court held a hearing to determine whether there is a basis to sustain that request. Having considered the evidence, briefing, and arguments of both counsel, the Court FINDS the "evidence sufficient to sustain the charge under the provision of the proper treaty"[1] and CERTIFIES Defendant's extradition to Brazil and commitment to the United States Marshals pending further decision by the Secretary of State.

### I. Procedural History

On May 3, 2024, the government filed a Criminal Complaint charging Defendant with a violation of 18 U.S.C. § 3184, Fugitive from a Foreign Country to the United States.[2] As stated in the Complaint, Brazil alleges Defendant sexually abused the victim between 2003 and 2010 in violation of Articles 217-A and 71 of the Brazilian Penal Code.[3] United States Marshals arrested Defendant on June 10, 2024.[4] At Defendant's Initial Appearance on June 25, 2024, the Court set an extradition hearing for September 24, 2024.[5] The Court ordered Defendant's detention at his Initial Appearance and Defendant has remained detained during the pendency

---

[1] 18 U.S.C. § 3184.
[2] Doc. 1.
[3] Doc. 1-1 at 2.
[4] Doc. 8.
[5] Doc. 16. Defendant initially appeared before the Court on June 14, 2024. Doc. 12. However, the Court continued the Initial Appearance in order to obtain a certified interpreter for Defendant.

of this case.

After multiple continuances, the Court held an evidentiary hearing on Defendant's extradition on March 6, 2025. At that hearing, the Court received evidence from both parties. From the government, the Court received authenticated and certified documents supporting Defendant's extradition that had previously been filed under seal and in redacted form in this case.[6] Included in the extradition packet were the following materials:

- The Declaration of Amy Lindsay, an Attorney Adviser in the Office of Legal Affairs for the Department of State, addressing the extradition treaty and documents submitted with the extradition packet;[7]
- Official correspondence from Brazil seeking the extradition of Defendant;[8]
- A copy of the extradition treaty between the United States and Brazil ("the Treaty");[9]
- Certificate of Douglas A. Koneff, Charge d'Affairs of the United States of America at Brasilia, Brazil, dated April 12, 2022, certifying the documents submitted in support of the extradition request;[10]
- Portuguese language extradition documentation and reports, Doc. 5-2 at 19-47;
- Certified English translation of the Portuguese language extradition documentation and reports;[11]
- Certificate of Kimberly Kelly, Minister Counselor for Consular Affairs, Brasilia, Brazil, dated January 18, 2023, certifying additional documents submitted in

---

[6] Docs. 4, 5, 68. The Court has reviewed the extradition packet provided by the government to the Court at the extradition hearing. The packet contains two groups of documents marked Government Exhibits 1 and 2, respectively. Government Exhibit 1 consists of unredacted documents provided to the Court at Docket 5. (The government filed redacted copies of those documents at Docket 4.) Government Exhibit 2 consists of documents filed by the government at Docket 69. The Court will cite to Dockets 5 and 68 in this Order.
[7] Doc. 5-2 at 1-2.
[8] *Id.* at 3, 4.
[9] *Id.* at 5-17.
[10] *Id.* at 18.
[11] *Id.* at 48-62.

Order – Certification of Extradition 2
*United States v. Anfilofev*

support of the extradition request;[12]

- Portuguese language identification documents for Defendant, the victim, and the victim's mother;[13]
- Statement of the victim and the victim's mother identifying Defendant;[14]
- Certified English translation of the Portuguese language identification documents for Defendant, the victim, and the victim's mother;[15]
- Certified English translation of statement of the victim and the victim's mother identifying Defendant;[16]
- Certificate of Kimberly Kelly, Minister Counselor for Consular Affairs, Brasilia, Brazil, dated June 2, 2024, certifying additional documents submitted in support of the extradition request;[17] and
- Translation and original Portuguese language documents relating to the statute of limitations for the offenses alleged in the extradition packet.[18]

Defendant offered seven exhibits at the evidentiary hearing. The first was a medical report of a physical examination of the minor victim conducted on December 8, 2010, that did not identify any physical evidence of the rape and sexual assault.[19] The remaining exhibits detailed matters relevant to Defendant's ex-wife's (and the victim's mother's) conduct, including:

- A Notice of Appearance by Defendant's ex-wife in the ongoing criminal prosecution against Defendant;[20]
- Two judicial opinions, the first addressing a real estate case brought by Defendant's ex-wife against him and others where the ex-wife sought ownership

---

[12] *Id.* at 63.
[13] *Id.* at 64-69.
[14] *Id.* at 70-71.
[15] *Id.* at 72-76.
[16] *Id.* at 77.
[17] Doc. 68-1 at 1.
[18] *Id.* at 2-6.
[19] Doc. 92-2. A summary of the same report is contained in the extradition packet at Doc. 5-2 at 51.
[20] Doc. 92-3.

of property she previously shared with Defendant,[21] and the second brought by one of the defendants in the first case seeking a declaration that the ex-wife was in unlawful possession of the property at issue in the first case;[22]

- A Declaration from Defendant's lawyer in the real estate cases, explaining those cases;[23] and

- Two letters rogatory offered to show Defendant's ex-wife's awareness of Defendant's residency in Alaska, the first a summons from Defendant's divorce case with the ex-wife dated October 21, 2013,[24] and the second a summons from the real estate dispute described above dated May 27, 2011.[25]

## II. Statement of Facts

Alessandra is the mother of LC, a girl born in 1999.[26] In 2002, Defendant married Alessandra in Brazil.[27] Defendant, Alessandra, and LC lived in Brazil until 2006, when they moved to Alaska.[28] The family stayed in Alaska until 2009 when they returned to Brazil.[29] In January 2010, Defendant returned to Alaska to resume work as a commercial fisherman.[30]

Police interviewed LC outside the presence of her mother on or about December 6, 2010.[31] During that interview, LC told Brazilian police that Defendant sexually abused her starting when she was four years old while they were living in Brazil.[32] LC said the first incident occurred when she and Defendant were watching a movie and her mother was in the backyard.[33] During that first incident, LC said Defendant touched her genitalia and then "took

---

[21] Docs. 92-4.
[22] Doc. 92-5.
[23] Doc. 92-6.
[24] Doc. 92-7.
[25] Doc. 92-8.
[26] Doc. 5-2 at 49.
[27] *Id.* The victim's mother has been identified in filings in this case. However, to protect the privacy of the victim, the Court will refer to the victim's mother only by her first name.
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.* (reporting that LC was accompanied to the interview by a Child Protective Counselor).
[32] *Id.*
[33] *Id.*

Order – Certification of Extradition 4
*United States v. Anfilofev*

Case 3:24-mj-00183-KFR     Document 98     Filed 03/26/25     Page 4 of 18

his pants off and put his penis in [her] vagina," stopping when she screamed.[34] LC said that the following day Defendant forced her to have sex with him.[35] LC said that Defendant threatened her, telling her that if she reported what had happened to her mother, Defendant would leave them and "leave the two [of them] without a house."[36] LC reported that the abuse occurred when she and Defendant were alone in the house in Brazil and continued after they moved to Alaska.[37] LC also said that Defendant's nephew forced her to have vaginal, anal, and oral sex with him, and that when she told Defendant, he replied that LC was allowed to "fuck" the nephew.[38] LC said the abuse stopped when she was 10 years old and no longer living with Defendant.[39]

On December 8, 2010, a forensic examination was performed on LC.[40] The examination found no physical evidence of rape or sexual assault.[41]

LC gave a second statement on or about December 14, 2010.[42] In that statement, LC repeated that the sexual abuse "started when [she] was four years old."[43] She also repeated the allegation that the first incident occurred while she and Defendant were watching a movie, but said that her mother was in the kitchen at the time.[44] LC said that Defendant first began by touching her body, and then proceeded to sexually assaulting and penetrating her.[45] She also repeated that the abuse continued while the family lived in Alaska, adding that Defendant would come to LC's room in the morning after LC's mother left for work at 4 a.m.[46] As it concerns Defendant's nephew, LC said that the nephew "started to penetrate her" and that he performed oral and anal sex. LC said that when she told Defendant, Defendant replied that

---

[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.* at 51.
[41] *Id.*
[42] *Id.* at 50-51.
[43] *Id.* at 50.
[44] *Id.*
[45] *Id.*
[46] *Id.*

"[LC] was allowed to fuck [the nephew]."[47]

In her second statement, LC also described an incident that occurred when the family lived in Alaska where her mother found her crying. At the time of the incident, LC told her mother that she had been crying because Defendant had said to LC that Defendant was not her father, but LC did not report to her mother why Defendant had made that remark.[48] LC explained that when she disclosed the abuse to her mother "last Saturday," she told her mother the reason Defendant had made the comment about her parentage was because Defendant was angry that LC had run away from him and locked herself in the bathroom.[49] LC also described in this statement that when Defendant penetrated her "whitish water came out of him."[50]

LC gave a third statement alone to social workers on or about June 22, 2011.[51] In this interview, LC said that the sexual abuse began when she was four years old and that it started with Defendant touching her under her clothes before progressing to putting his hands on her vagina and kissing her mouth.[52] She explained that Defendant told her that "this was their secret [and] if the mother found out he would abandon them and make their life miserable, making them homeless."[53] LC said that the abuse "got worse" in Alaska and that Defendant had anal and oral sex with LC on a near-daily basis after LC's mother would leave the house in the mornings to go to work.[54] LC also said that Defendant's nephew had anal sex with her and that she felt pain "every time."[55] She also said that when she told Defendant, Defendant replied that she "was allowed to 'fuck' [the nephew]."[56]

During the investigation police and other officials also interviewed LC's mother. Alessandra first spoke with Child Protective Services (CPS) on December 6, 2010.[57] In her

---

[47] *Id.* at 51.
[48] *Id.* at 50-51.
[49] *Id.* at 51.
[50] *Id.*
[51] *Id.* at 53-54.
[52] *Id.* at 54.
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.* at 52.

Order – Certification of Extradition  6
*United States v. Anfilofev*

statement to CPS, Alessandra described the marital problems she and Defendant had been having since January 2009 and reported that these problems existed because Defendant did not want Alessandra going to school in Brazil.[58] Alessandra also said that because she was taking a preparatory course for the university entrance exam Defendant had begun to threaten her and had taken away the family vehicle.[59] During an argument on Saturday, December 4, 2010, while Defendant was out of the country, Alessandra said that Defendant told her that when he returned to Brazil Alessandra would perform oral sex on him.[60] Alessandra said that she refused, and in response Defendant said that LC would perform oral sex on him and that she "wouldn't be left aside."[61] Alessandra reported that when she asked LC what Defendant meant by his comment, LC began to cry and said that Defendant had been sexually assaulting her since she was four or five years old.[62] Alessandra said that LC told her that the abuse began with Defendant touching LC's "private parts" and that he put his penis in her vagina but stopped after she screamed.[63] LC told Alessandra that the abuse would occur whenever LC was alone with Defendant, and that included oral and anal sex.[64] Alessandra also said that LC told her that Defendant threatened the family with homelessness if LC reported the abuse.[65] According to Alessandra, LC also said that the abuse continued after the family moved to Alaska, and that it would occur in the mornings before school after Alessandra left for work at 4 am.[66] Alessandra also reported that LC told her that Defendant's nephew had had vaginal, oral and anal sex with the girl, and that Defendant told her daughter that the nephew was allowed to do this.[67]

In a statement to police on December 14, 2010, Alessandra described the timeline of

---

[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *Id.* at 53.
[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] *Id.*

her relationship with Defendant and the troubles in their marriage.[68] She also repeated how she became aware of the alleged molestation of her daughter, growing concerned after an argument with Defendant where he angrily said Alessandra would perform oral sex on him when he returned to Brazil in May 2010 and that watching that act would make LC want to perform it as well.[69] When Alessandra asked LC about this comment, Alessandra said that LC told her she had been raped by Defendant and that the sexual abuse had been ongoing since she was four years old.[70] Alessandra also said that LC told her that the abuse occurred when Alessandra was distracted, would take place in the car while LC was in the front seat, and, when in Alaska, happened when Alessandra was not present.[71] Alessandra also told police that LC told her that Defendant had tried to insert his penis into her vagina but was unable to, and that he had oral and anal sex with LC.[72]

In addition, Alessandra also described statements her daughter made about Defendant's nephew. Alessandra said that LC told her that the nephew had raped LC once, and that after not being able to have vaginal sex with the girl that he forced her to have anal sex.[73] Alessandra said that LC told her that when LC reported what the nephew had done to Defendant, Defendant said that LC "was allowed to fuck [the nephew]."[74]

Alessandra gave a third interview to social workers on June 22, 2011. In that statement, Alessandra described when she met Defendant, how they lived in Brazil from 2002 to 2006, with Defendant traveling to Alaska during the commercial fishing season, and how they decided in 2006 to relocate as a family to Alaska.[75] Alessandra also said that she, Defendant, and LC returned to Brazil in 2009.[76] Alessandra said that "in the second half of 2010" she decided to return to school against Defendant's wishes, which resulted in Defendant

---

[68] *Id.* at 49-50.
[69] *Id.* at 50.
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] *Id.* at 53.
[76] *Id.*

withholding money from her and LC.[77] After a period of time in which Defendant did not communicate with Alessandra, she reported that he finally called and said that he would return to Brazil and that Alessandra would perform sexual acts on him.[78] When Alessandra refused, she said that Defendant grew furious and said that "if [Alessandra] didn't do it, her daughter would do it."[79] Alessandra said she spoke to LC about Defendant's comment that night and that her daughter said that Defendant "did the same thing [to her that] he did with [Alessandra.]"[80] Alessandra further said that Defendant's nephew had also sexually assaulted LC and recalled an instance where she found it strange that LC did not want to talk on the phone with the nephew.[81]

On September 22, 2014, Brazilian officials formally accused Defendant of "between 2003 and 2006 and between 2009 and mid-2010 . . . intentionally, willingly and consciously, aware of the illegality and reprehensibility of his conduct, indecently and sexually assault[ing] . . . LC . . . by threatening her and by caressing her genitals and forcing her to have anal and oral sex with him" in violation of Brazilian law.[82]

For the next six and a half years, Brazilian officials attempted to locate and serve Defendant.[83] On February 9, 2020, Brazilian officials requested authorization to contact Interpol.[84] On February 24, 2021, Brazilian officials contacted Interpol.[85] Interpol informed Brazil on September 1, 2021, that Defendant had been located in the United States.[86] On or about December 2, 2021, Brazilian officials submitted an "Extradition Request Form" seeking Defendant's extradition from the United States.[87]

After submitting their request to extradite, Brazilian officials provided additional

---

[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Id.*
[81] *Id.*
[82] *Id.* at 54, 59-60.
[83] *Id.* at 54-55.
[84] *Id.* at 55; *see also id.* at 61.
[85] *Id.* at 55.
[86] *Id.*
[87] *Id.* at 48, 58.

Order – Certification of Extradition 9
*United States v. Anfilofev*

supporting documentation to United States officials. This documentation included a handwritten and signed affidavit from LC dated August 2022 in which she identified Defendant "as the person that committed the crimes described in the Information."[88]

### III. Legal Standards

An extradition hearing is "akin to a grand jury investigation or a preliminary hearing under Federal Rule of Criminal Procedure 5.1."[89] Accordingly, this Court's review is limited to whether the crime a defendant is accused of falls within the terms of an extradition treaty, and whether there is probable cause to believe that a defendant committed the crime charged.[90] If "the judicial officer determines that there is probable cause, '[they are] required to certify the individual as extraditable to the Secretary of State.'"[91] "To establish the level of probable cause necessary to certify one for extradition, evidence must be produced that is 'sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'"[92]

The Court's inquiry "is limited to determining whether there is competent evidence to justify holding [Defendant] to await trial, and not to determine whether the evidence is sufficient to justify a conviction."[93] "The larger assessment of extradition and its consequences is committed to the Secretary of State."[94]

Federal law governs the evidence to be considered at the extradition hearing. Evidence may be admitted in support of extradition when it is properly authenticated and would "be received for similar purposes by the tribunals of the foreign country from which the accused

---

[88] *Id.* at 77. The affidavit does not indicate the day it was signed. However, a similar document prepared by Alessandra is dated August 9, 2022, *id.*, and the request to include the affidavit in the official court file is dated August 10, 2022, *id.* at 74.
[89] *Santos v. Thomas*, 830 F.3d 987, 991 (9th Cir. 2016) (citing *Charlton v. Kelly*, 229 U.S. 447, 461-62 (1913).
[90] *Id.* at 987.
[91] *Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006) (quoting *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1208 (9th Cir. 2003)).
[92] *In re Extradition of Atta*, 706 F. Supp. 1032, 1050 (E.D.N.Y. 1989) (quoting *Coleman v. Burnett,* 477 F.2d 1187, 1202 (D.C. Cir. 1973)).
[93] *Collins v. Loisel*, 259 U.S. 309, 316-17 (1922).
[94] *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997).

party shall have escaped."[95] "[A]uthentication is the only requirement for admissibility of evidence under general United States extradition law."[96] Unsworn statements contained within law enforcement summaries of an investigation may constitute competent evidence at an extradition hearing.[97]

An accused has a limited right to introduce evidence at the extradition hearing. However, this evidence is limited to evidence that "explain[s] matters referred to by the witnesses for the government."[98] Evidence that "contradicts the testimony for the prosecution" is not permitted.[99] "Explanatory evidence is evidence that 'explains away or completely obliterates probable cause,' whereas contradictory evidence is that 'which merely controverts the existence of probable cause, or raises a defense.'"[100] This limitation exists to prevent the extradition hearing from becoming a "full trial on the merits" of the foreign country's allegations against the defendant.[101]

## IV. Analysis

### a. The Court Will Not Consider the Evidence Submitted by Defendant.

Defendant seeks to admit six exhibits for the Court's consideration. These items include a medical examination finding no physical evidence to support the victim's allegations against Defendant, a document containing the victim's mother's Notice of Appearance in the

---

[95] 18 U.S.C. § 3190.
[96] *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1406 (9th Cir. 1988) (citing *Emami v. U.S. Dist. Ct. for N. Dist. of Cal.*, 834 F.2d 1444, 1451 (9th Cir. 1987)).
[97] *See Collins*, 259 U.S. at 317 (finding that "unsworn statements of absent witnesses may be acted upon by the committing magistrate); *see also Zanzanian v. United States*, 729 F.2d 624, 627 (9th Cir. 1984) (upholding admissibility of "unsworn multiple hearsay" contained in certified documents). As was the case in *Zanzanian*, the United States' extradition treaty with Brazil does not require the submission of sworn statements and permits a request for extradition to be supported by "the depositions upon which such warrant or order may have been issued and such other evidence or proof as may be deemed competent in the case." Treaty at Art. IX(2).
[98] *Charlton*, 229 U.S. at 461.
[99] *Collins*, 259 U.S. at 316-17; *see also Barapind v. Enomoto*, 400 F.3d 744, 750 (9th Cir. 2005) ("[E]xtradition courts 'do not weigh conflicting evidence' in making probable cause determinations." (quoting *Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986)); *see also In re Extradition of Mainero*, 990 F. Supp. 1208, 1218 (S.D. Cal. 1997) ("Evidence that conflicts with that submitted on behalf of the demanding party is not permitted, nor is impeachment of the credibility of the demanding country's witnesses.").
[100] *Santos*, 830 F.3d at 992 (quoting *Mainero*, 164 F.3d at 1207 n.7).
[101] *Collins*, 259 U.S. at 316.

Case 3:24-mj-00183-KFR   Document 98   Filed 03/26/25   Page 11 of 18

Brazilian case for which extradition is sought, and five documents describing the victim's mother's litigation against Defendant in a real estate matter and their divorce.[102] In Defendant's view, the medical examination "discredit[s]" the victim's allegations of rape and sexual assault.[103] The remaining documents "destroy" probable cause because they "show… [Defendant's] ex-wife's conflict of interest and history of filing meritless litigation against him[.]"[104]

As for the medical report that found no evidence of sexual abuse, the Court finds nothing in this report explains away or obliterates probable cause for the allegations in this case. Indeed, as Defendant concedes, the absence of any medical findings "doesn't prove the abuse did not happen."[105] To the Court, the purpose of the medical report is to cast doubt on the victim's allegations and push a theory of the case that the abuse the victim alleges did not in fact occur. Such evidence may be appropriate in a trial on the merits, but not in an extradition hearing.[106]

The documents relating to Defendant's ex-wife are similarly outside the scope of evidence the Court can properly consider in this extradition hearing. These documents describe actions taken by the victim's mother that, in Defendant's view, undermine her credibility and cast doubt on the victim's credibility. Defendant argues that "[t]his evidence . . . explains why [the mother's] statements cannot be *credited* at all and why her role and conduct undermine the evidence that came through her then-minor daughter."[107] However, questions of credibility "in no way 'explain' . . . the government's evidence."[108] The

---

[102] Docs. 92-2–92-8.
[103] Doc. 87 at 14.
[104] *Id.* at 19.
[105] *Id.* at 14.
[106] *Eain v. Wilkes*, 641 F.2d 504, 511 (9th Cir. 1981) ("An accused in an extradition hearing has no right to contradict the demanding country's proof[.]").
[107] Doc. 87 at 20 (emphasis added).
[108] *Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2d Cir. 1973); *see also Rana v. Jenkins*, 113 F.4th 1058, 1071 (9th Cir. 2024) (declining to consider proffered evidence relating to a witness's credibility because the evidence did not come "anywhere close to a direct recantation of [the witness's] testimony" sufficient to obliterate probable cause; *In re Extradition of Sandhu*, No. 90 CR. MISC. 1(JCF), 1997 WL 277394, at *6 (S.D.N.Y. May 23, 1997) (denying admission of proof that the defendants may have been victims of fabricated evidence in other cases).

clear purpose of the evidence relating to Defendant's ex-wife is to impeach the statements of the victim and her mother contained in the extradition packet. But at an extradition hearing, a defendant "may not impeach government witnesses or produce witnesses whose testimony contradicts evidence already offered by the government."[109]

Therefore, the Court will not consider the evidence offered by Defendant. That evidence either presents facts "contradicting the government's proof" or offers impeachment evidence.[110] Neither of those categories of evidence is permitted in an extradition hearing.

### b. The Government Has Established the Necessary Elements to Certify Extradition.[111]

#### i. The Court Has Subject Matter and Personal Jurisdiction over Defendant.

The Court has subject matter jurisdiction to conduct extradition proceedings pursuant to 18 U.S.C. § 3184.[112] The Court also has personal jurisdiction over Defendant, who was located and arrested in the District of Alaska and has remained in the district continuously since that time.[113] The Court has also reviewed the photographs in the extradition packet and finds that the person identified in those materials as Defendant is the person who was arrested in the District of Alaska and has appeared before the Court.[114]

#### ii. The Extradition Treaty Is in Full Force and Effect and the Crime Alleged Fell within the Terms of the Treaty.[115]

There is an extradition treaty in full force and effect between the United States and Brazil.[116] Article I of the Treaty requires the return of fugitives who have been "charged with

---

[109] *Santos*, 830 F.3d at 993 (citing *Charlton*, 229 U.S. at 461).
[110] *Id.* (citing *Hooker*, 573 F.2d at 1368).
[111] At the evidentiary hearing Defendant conceded that the only issue in dispute was whether there was probable cause to support the extradition.
[112] *See also* District of Alaska L.M.J.R. 4(18); *Santos*, 830 F.3d at 991 ("[T]he district court, which may include a magistrate judge, conducts [an extradition hearing.]").
[113] 18 U.S.C. § 3184 (granting jurisdiction over "any person found within [the Court's] jurisdiction")
[114] Doc. 5 at 64-65.
[115] Brazil also seeks Defendant's extradition for a firearms offense. The government did not seek and the Court does not certify extradition for this firearms offense.
[116] *See* 18 U.S.C. § 3181, Statutory Notes; *see also* Doc. 5-2 at 1 (Declaration of Amy Lindsay, Attorney-Advisor in the Office of the Legal Adviser for the U.S. Department of State).

or convicted of any of the crimes or offenses specified in Article II [of the Treaty] and committed within the territorial jurisdiction [of the requesting state]."[117] Article II of the Treaty includes "rape" and "carnal knowledge of (or violation of) a girl under the age specified in law[.]"[118] Extradition for a violation of a crime listed in Article II requires dual criminality, that is, the offense alleged must be a felony in both the United States and Brazil.[119] Dual criminality exists if the "'essential character' of the acts criminalized by the law of each country are the same and if the laws are 'substantially analogous.'"[120]

The Court has examined the description of the offense contained in the extradition packet. Brazil has charged Defendant with Violent Indecent Assault, a crime that carries a possible penalty of more than one year in prison.[121] Specifically, Brazil alleges that Defendant, between 2003 and 2006 and 2009 and mid-2010, sexually assaulted a girl between the age of four and 10 by touching her genitals and forcing her to have oral and anal sex.[122] The underlying conduct in this case constitutes rape and carnal knowledge of a minor under the age of 14, the age specified in the relevant Brazilian statute.[123] Similarly, the crime as alleged would constitute felony violations of United States and Alaska laws.[124] The dual criminality standard has been met.

### iii. There is Probable Cause to Believe Defendant Committed the Charged Offense.

A review of the evidence submitted by the government establishes probable cause that

---

[117] Treaty of Extradition Between the United States of America and the United States of Brazil, U.S. – Braz. (Jan. 13, 1961), 15 U.S.T. 2093, as amended by Additional Protocol to the treaty of Extradition of January 13, 1961, Between the United States of America and the United States of Brazil, U.S. – Braz. (June 18, 1962), 15 U.S.T. 2112.
[118] *Id.* at art. II(2)(a).
[119] *Id.* at art. III; *see also Clarey v. Gregg*, 138 F.3d 764, 765 (9th Cir. 1998); *Emami*, 834 F.2d at 1449.
[120] *Theron v. United States Marshal*, 832 F.2d 492, 496 (9th Cir. 1987) (quoting *Wright v. Henkel*, 190 U.S. 40, 58 (1903)); *see also Clarey*, 138 F.3d at 766 ("[W]hen the laws of both the requesting and the requested party appear to be directed to the same evil, the statutes are substantially analogous.").
[121] Doc. 5-2 at 56, 62.
[122] *Id.* at 59.
[123] As defined in the Model Penal Code, rape includes the anal penetration by a man of a female by force or when the female is less than 10 years old.
[124] *See* 18 U.S.C. § 2241(c); Alaska Stat. § 11.41.434(a)(2).

Order – Certification of Extradition 14
*United States v. Anfilofev*
Case No. 3:24-mj-00183-KFR

Defendant committed the extraditable offense. In three separate statements between December 2010 and June 2011 to at least two different Brazilian agencies, LC described how Defendant touched her genitalia and forced her to engage in anal and oral sex when she was between four and 10 years old, how that abuse occurred in Brazil and Alaska, and how Defendant threatened LC with homelessness if she told her mother. LC reaffirmed these allegations in a signed declaration in August 2022. This evidence is sufficient to support the Court's probable cause finding.[125]

LC's four statements are competent evidence, despite the minor inconsistencies between those statements.[126] The core of LC's allegations during the initial investigation—when the abuse started, where it occurred, its nature, how long it endured, and that Defendant's nephew had been involved—remained consistent throughout the investigation.[127] Furthermore, LC's allegations are generally corroborated by the statements of her mother, who relayed to law enforcement and social workers what her daughter had told her. In Alessandra's initial statement on December 6, 2010, and in the follow up on December 14, 2010, she provided detailed information about what LC had told her that mirrored the information LC gave independently to police and social workers. This consistency continued with Alessandra's statement on June 22, 2011. That the statements between LC and her mother may not have been perfectly aligned in their description of the abuse suffered by LC does not demonstrate the absence of competent evidence supporting probable cause.[128]

---

[125] *See Lee v. Harris*, 127 F.4th 666, 673 (7th Cir. 2025) (stating that a single reliable witness is sufficient for probable cause).

[126] The Court does not find the errors in the extradition packet relating to LC's reported age, or the dates of prior statements to be relevant to its analysis. *See* Doc. 87 at 12. Rather, the Court believes these to be scrivener's errors that do nothing to undermine the substance of the allegations made by LC and Alessandra.

[127] *See United States v. Hall*, 419 F.3d 980, 987 (9th Cir. 2005) (finding corroboration through the "consistency with which [the witness] reported the events to multiple people shortly after the incident").

[128] *See In re Extradition of Luna-Ruiz*, No. CV 13-5059 VAP (AJW), 2014 WL 1089134, at *8 (C.D. Cal. Mar. 19, 2014) ("[P]urported inconsistencies within and between [witnesses'] statements do not destroy or negate the government's probable cause showing[.]" (citing *Gamez v. Stafford*, No. 12-CV-1632 W(MDD), 2012 WL 4471579, at *2 (S.D. Cal. Sept. 25, 2012))); *see also See In re Sainez*, 2008 WL 366135 at *18 (rejecting inconsistencies and conflicts as "not sufficient to negate the showing of probable

The Court has not admitted the evidence submitted by Defendant. However, some of the information within the evidence sought to be admitted by Defendant is in the extradition packet, including the results of LC's physical examination,[129] Alessandra's status as an attorney in her daughter's case,[130] and Alessandra's knowledge of the fact that Defendant resided in the Alaska during the investigation.[131] The Court also has information relating to the marital struggles of Defendant and Alessandra at the time of the allegations,[132] Alessandra's financial struggles,[133] and actions allegedly taken by Defendant contrary to Alessandra's interests.[134] Furthermore, the extradition packet contains information relating to Alessandra's refusal to engage LC in counseling.[135]

As it is permitted to do based on the evidence properly admitted, the Court has assessed the credibility of the witnesses and given their testimony appropriate weight considering all of the evidence in the record.[136] This assessment includes the possibility that Alessandra may have sought to influence LC's statements. At least two of LC's statements were made outside the presence of her mother, and the reaffirmation of the allegations against Defendant occurred after she reached adulthood. The Court cannot conclude that LC's allegations are the result of improper influence. And to the extent that any of the above issues detract from the reliability of either Alessandra or LC, they do not completely obliterate probable cause.[137]

The evidence of Defendant's guilt that the government has presented is not overwhelming. However, the Court's role in this extradition proceeding is not to determine

---

cause."); *Quinn*, 783 F.2d at 815 ("The magistrate does not weigh conflicting evidence and make factual determinations but, rather, determines only where there is competent evidence to support the belief that the accused has committed the charged offense.").

[129] Doc. 5-2 at 51.
[130] *Id.* at 55, 66.
[131] *Id.* at 49, 53, 55 ("Alessandra . . . said that the defendant was residing in Alaska.").
[132] *Id.* at 49-50, 52, 53.
[133] *Id.* at 53.
[134] *Id.* at 52, 53.
[135] *Id.* at 51-54.
[136] *See Quinn*, 783 F.2d at 815 (citing *Garcia-Guillern v. United States*, 450 F.2d 1189, 1192 (5th Cir. 1971)).
[137] *See Gamez*, 2012 WL 4471579, at *2 (explaining that "so long as reliability issues do not completely obliterate the evidence supporting probable cause," the extradition judge was "free to determine the weight to be accorded each eyewitness statement" (internal quotation marks omitted)).

guilt or innocence. Instead, it is to determine if sufficient competent evidence has been presented to establish probable cause to believe Defendant committed the offense alleged in the extradition packet. The government has met their burden in this case.

## V. Conclusion

Having held an extradition hearing on March 6, 2025, and having considered the evidence, in particular the certified and authenticated documents submitted by the Government of Brazil, and the pleadings and arguments of both counsel, the Court FINDS and CERTIFIES to the United States Secretary of State as follows:

1. This Court has jurisdiction over, and the undersigned is authorized to conduct extradition proceedings pursuant to 18 U.S.C. § 3184;
2. This Court has personal jurisdiction over Defendant, who was found and arrested on June 10, 2024, in the District of Alaska pursuant to a Criminal Complaint filed by the United States in response to the request of the Government of Brazil for the arrest and extradition of Defendant;
3. The Treaty between the United States and the Government of Brazil was in full force and effect at all times relevant to this action;
4. The Timofiy Anfilofev sought by the authorities of Brazil and the Timofiy Anfilofev arrested in the District of Alaska for extradition and brought before this Court are one and the same person;
5. Defendant has been charged with performing a sex act with a minor under the age of 14 contrary to Article 217-A and Article 71 of the Brazilian Penal Code.[138] The Government of Brazil has jurisdiction over this criminal conduct;
6. Article Two of the Treaty encompasses the offense for which Defendant has been charged and for which extradition is sought;
7. The Government of Brazil has submitted documents that were properly

---

[138] The Government of Brazil also seeks Defendant's extradition so that he may be prosecuted for a firearm offense, in violation of Article 16 of the Brazilian Penal Code. However, the United States is not seeking certification on this charge. Accordingly, the Court does not certify extradition on the firearms offense.

Order – Certification of Extradition 17
*United States v. Anfilofev*
Case No. 3:24-mj-00183-KFR

authenticated and certified in accordance with the terms of the Treaty. Those documents include the pertinent text for the crime of which Defendant has been charged;

8. There is probable cause to believe Defendant committed the offense for which extradition is sought; and

9. The evidence before this Court is sufficient to provide a reasonable basis to believe that the person sought committed the offense for which extradition is requested. This finding rests upon the documents submitted by the Government of Brazil.

Therefore, pursuant to 18 U.S.C. § 3184 and the above findings, the Court certifies the extradition of Defendant, Timofiy Anfilofev, to Brazil, on the offense of performing a sex act with a minor under the age of 14 contrary to Article 217-A and Article 71 of the Brazilian Penal Code, and commits Defendant to the custody of the United States Marshal pending further decision on the extradition and surrender by the Secretary of State pursuant to 18 U.S.C. § 3186.

It is further ordered that the Clerk of the Court for the District of Alaska shall forward a certified copy of this Certification and Commitment for Extradition, together with a copy of the evidence presented in this case, including the formal extradition documents received in evidence and any testimony received in this case, to the Secretary of State.

IT IS SO ORDERED.

DATED this 25th of March 2025, at Anchorage, Alaska.

KYLE F. REARDON
United States Magistrate Judge
District of Alaska